Kathleen P. Johnson, Esq. Informal Opinion Village Attorney No. 96-1 Village of Kenmore Municipal Building 2919 Delaware Avenue Kenmore, N Y 14217-2394
Dear Ms. Johnson:
You have asked for an opinion regarding your village's volunteer fire/rescue department. A local attorney has mailed the department a copy of a client's health care proxy and living will. The attorney states that the client, who is a village resident, has consented to an order not to resuscitate (DNR) and has designated a proxy and an alternate to make health care decisions for the client in the event she becomes incapacitated. The attorney has asked the department to honor the client's wishes as expressed in the living will and health care proxy if the department is called to her residence. You ask whether the department is obligated to honor this request, whether it must maintain records of such requests, and whether it must review such records before responding to emergency calls.
Public Health Law Article 29-B governs orders not to resuscitate. Section 2977 makes express provision for nonhospital orders not to resuscitate. It states that "emergency medical services personnel", among others, "shall honor nonhospital orders not to resuscitate" except in limited circumstances specified in the statute. Public Health Law §2977(1). "Emergency medical services personnel" is defined to include personnel of a service providing initial emergency medical assistance, including first responders, emergency medical technicians and advanced emergency medical technicians. Id., § 2961(7). Thus, the village volunteer fire/rescue department is required to honor nonhospital orders not to resuscitate issued according to Public Health Law §2977.
The statute also defines notice to these personnel of the existence of a nonhospital order not to resuscitate.
 Emergency medical services personnel, hospital emergency service personnel or correctional facilities medical care personnel who are provided with a nonhospital order not to resuscitate, or who identify the standard bracelet on the patient's body, shall comply with the terms of such order; provided, however, that:
 (a) emergency medical services personnel, hospital emergency service personnel or correctional facilities medical care personnel may disregard the order if:
 (i) they believe in good faith that consent to the order has been revoked, or that the order has been cancelled; or
 (ii) family members or others on the scene, excluding such personnel, object to the order and physical confrontation appears likely;
 . . .
Id., § 2977(10). This subsection addresses situations that may arise at the scene of an emergency, indicating a legislative intent that emergency medical services personnel be provided with DNR orders, or identify a standard bracelet, at the scene of an emergency.
We do not believe that the statute was intended to require emergency medical services personnel to maintain copies of DNR orders and health care proxies or to review such files before responding to emergency calls. The statute places the burden of record keeping with respect to DNR orders on the patient and his or her attending physician and imposes no such requirements on emergency personnel. Section 2977(3) provides that a nonhospital DNR order may be issued during hospitalization to take effect afterward or may be issued to a person who is not a hospital patient. The attending physician must note the order on the patient's medical record and review whether the order is still appropriate each time he or she examines the patient and at least every 90 days. Id., § 2977(5), (8). The order is to be issued on a standard form and the Commissioner is directed to develop a standard bracelet that may be worn by a patient with a DNR order to identify that status. Id., § 2977(6).
The statute also provides that a person who has consented to a DNR order may revoke it at any time by any act evidencing a specific intent to revoke. Any health care professional who becomes aware of a revocation is required to notify the attending physician, who must note the revocation in the patient's chart, cancel the order "and make diligent efforts to retrieve the form issuing the order, and the standard bracelet, if any".Id., § 2977(9). Not only does this section make the attending physician responsible for record keeping, it expresses the Legislature's intent that a person who has consented to a DNR order may freely revoke that consent at any time. A requirement that emergency medical personnel keep records of such orders on file, review them before responding to emergency calls and act according to the filed records would not take into account the possibility that the orders may have been revoked. Statutory requirements do not envision such filings. In any event, reliance on such filings would not be prudent in light of the foregoing statutory requirements governing revocation of DNRs. Moreover, as you note, such a requirement would impede swift provision of emergency assistance.
We also note that pursuant to Public Health Law Article 29-C, an agent designated in a health care proxy has no authority to act until the principal's attending physician makes a determination that the principal lacks capacity to make health care decisions. Id., §§ 2981(4), 2983(1). For a decision by an agent to withhold life-sustaining treatment, the attending physician must consult with another physician to confirm the determination of the incapacity of the principal. Id., § 2983(1). Emergency medical services personnel are not authorized to make that determination and so would not be responsible for deciding in the first instance whether an agent named in a proxy is authorized to make health care decisions.
Responding to your questions, you are not required to keep the DNR on file. You should communicate this position to the person who requested filing along with its legal basis so that statutory requirements regarding the honoring of DNRs can be met. While a formal procedure is not required, members of the emergency squad should fully understand the conditions for honoring a DNR.
We conclude that a village volunteer fire/rescue department is required to honor nonhospital orders not to resuscitate issued pursuant to Public Health Law § 2977. Members of the department may disregard such orders only in the circumstances described in Public Health Law § 2977(10). The statute does not require emergency service providers to maintain files of such orders or to review such orders before responding to calls for emergency assistance.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
SIOBHAN S. CRARY, Assistant Attorney General